Filed 2/6/14  Marriage of Jackson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of CHRISTOPHER and KAREN ROQUE JACKSON. | |
| | D063215 |
| CHRISTOPHER JACKSON, | |
| Appellant, | (Super. Ct. No. DS39566) |
| v. | |
| KAREN ROQUE JACKSON, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Christopher Jackson, in pro. per., for Appellant.

Law Offices of Donald R. Oder and Donald R. Oder for Respondent.

In this marital dissolution action between Christopher Jackson and Karen Roque Jackson, Christopher[1] appeals in propria persona the trial court's order granting Karen's motion for the appointment of an elisor[2] to execute a quitclaim deed transferring to her the title to what the parties refer to as the Eastlake Trails House.  In granting her motion, the court found that Karen is the owner of the property pursuant to the parties' Marital Settlement Agreement (MSA).

Although Christopher's contentions are not clearly stated in his appellant's opening brief,[3] it appears he is raising the following three principal contentions:  (1) the court denied him his right to mediation and binding arbitration, which was a right provided in the MSA; (2) the court "failed to acknowledge" that a post-MSA loan modification agreement executed by the parties served as a novation of the MSA, such that the loan

[1]     As is the custom in family law proceedings, and in the interest of clarity, we refer to the parties by their first names.  (See *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 390, fn. 1.)  We intend no disrespect.

[2]     The appointment of an elisor is one method available to a court for enforcement of its orders.  (*Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635.)  An elisor is a person appointed to perform certain functions, such as deed and document execution, in cases involving recalcitrant litigants who refuse to obey orders of the court.  (*Id.* at p. 1635, fn. 2.)

[3]     Christopher's appellant's opening brief does not comply with the requirements of the California Rules of Court.  His brief (1) does not begin with a table of contents and a table of authorities as required by rule 8.204(a)(1)(A); (2) does not "[s]tate each point, under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority" as required by rule 8.204(a)(1)(B); (3) does not adequately comply with the requirements that it "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears" as required by rule 8.204(a)(1)(C); and (4) is not paginated as required by rule 8.204(b)(7).

modification agreement, "under Federal Law, voided and canceled any [MSA] terms which would require [Christopher] to transfer his ownership in the [Eastlake Trails House]"; and (3) the court "failed to acknowledge" that Karen committed numerous breaches of the MSA which "render[ed] the [MSA] null and void."

We conclude Christopher has failed to provide this court with an adequate record. Thus, he has not met his burden of overcoming the presumed correctness of the challenged orders by affirmatively demonstrating error. We also conclude that he has forfeited his claims by failing to comply with rules 8.204(a)(1)(B) and 8.204(a)(1)(C) of the California Rules of Court.[4] Accordingly, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Christopher and Karen were married in 1993.

A. *The Parties' MSA*

On May 5, 2009, the parties signed the MSA. As pertinent here, paragraph VIII(B) provided that Karen was "awarded and assigned" the Eastlake Trails House "as her share of the community property." Paragraph VIII(A) provided that Christopher was "awarded and assigned" (among other things) the "Vegas Condo" "as his share of the community property."

Under paragraph XII ("Execution of Instruments") of the MSA, the parties agreed to "execute and deliver any documents, make all endorsements, and do all acts which are necessary or convenient to carry out the terms of [the MSA]."

---

4        All further rule references are to the California Rules of Court.

Also, paragraph XV ("Resolution of Disputes") of the MSA provided for mediation or binding arbitration of "[a]ll" disputes as follows:

"All disputes arising between us on any matter whatever will be resolved as follows:

"A.  Mediation

"(1)  If we are unable to resolved any dispute ourselves or with counseling, then we each agree to make a reasonable good-faith effort to resolve the matter in mediation. *On the written request of either party*, we will within thirty days submit our dispute to mediation . . . .

"B.  Arbitration

"(1)  If mediation does not resolve all issues within a reasonable number of sessions, then on the written request of either of us, we will submit the matter to binding arbitration within ninety days. . . . [¶] . . .

"(5)  **Arbitration is binding and final.**  The decision of the arbitrator(s) will be binding and final, not subject to review in any court.  We each understand that by agreeing to binding arbitration, we are choosing arbitration as the sole remedy for any dispute between us, and we each expressly give up our right to file a lawsuit or family-law proceeding in any court against one another, or to request a court to resolve any dispute between us, except to compel arbitration or enforce the decision of an arbitrator.  We understand that this means we are giving up the right to trial by a court or by a jury.  To whatever extent the law does not allow any issue between us to be decided by binding arbitration, we agree to submit such matters to nonbinding arbitration before submitting the issue to any court."

B.  *Christopher's Petition for Dissolution and Entry of Judgment*

Eight days later, on May 13, 2009, Christopher filed in propria persona a petition for dissolution of the marriage.  Attached to the petition as "Attachment 4" was a copy of the MSA.  Karen filed her response to the petition in June 2009.

4

In late February 2010, the judgment of dissolution was entered, a notice of entry of judgment was filed, and copies of the notice were served on the parties.

C. *Loan Modification Agreement*

In September 2010 the parties signed a Home Affordable Modification Agreement (the loan modification agreement), which modified the loan on the Eastlake Trails House. In pertinent part, the loan modification agreement provided that it "will . . . amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

D. *Karen's Opposed Motion for Appointment of An Elisor*

In October 2012 Karen filed in propria persona her motion for appointment of an elisor. In her supporting declaration, Karen indicated that under the division of property set forth in the judgment of dissolution, she was "awarded possession" of the Eastlake Trails House, and Christopher signed the loan modification agreement with "FULL KNOWLEDGE that the house was and is still my possession as decreed in the divorce settlement." She also stated in her declaration that, "[a]t that time [Christopher] did agree to sign a [quitclaim deed], but he never got around to it. Now he claims he owns the home. I have made all mortgage payments on the property since the divorce settlement and loan modification." She requested that the court appoint an elisor "to sign over the [quitclaim] and ownership of the property to me."

In his opposition to Karen's motion, Christopher in propria persona asserted that Karen had "failed to provide sufficient evidence to prove she has sole rights to [the Eastlake Trails House]." In his supporting declaration, Christopher stated that Karen "breached the originally executed settlement [a]greement in this case." He also asserted

5

that Karen had "stopped making payments on the loan for the [Eastlake Trails House] without [his] consent or notifying [him], for the sole purpose of obtaining and qualifying for a 'Loan Modification' for the . . . property."  Christopher further stated that, "[a]fter discussing the situation and terms with [Karen, he] agreed to stay on as an obligor for [the Eastlake Trails House] only if she would AGREE to share the ownership of [the property] with [him] going forward.  As per her Agreement to my DEMANDS we executed the NEW AGREEMENT together and kept [the Eastlake Trails House] together."  He also stated that he "agreed to sign over [his] interest in [the Eastlake Trails House] only if [Karen] was successful in relieving [him] of any financial obligation which she was NOT able to achieve."

E.  *Christopher's Opposed Motion for a "Property Control" Order*[5]

The day after Karen filed her motion for appointment of an elisor, Christopher filed in propria persona a motion for a "property control" order in which he sought "exclusive temporary use, possession, and control" of the Eastlake Trails House.

F.  *Hearing and Rulings*

On December 17, 2012, the court conducted an evidentiary hearing on Karen's motion for appointment of an elisor and Christopher's motion for a property control order.  A reporter's transcript of the hearing is not provided in the record on appeal, and

---

[5]     Christopher is not appealing the court's denial (discussed, *post*) of this motion. Accordingly, our summary of his motion is brief.

Christopher's notice designating record on appeal shows he elected to proceed "WITHOUT a record of the oral proceedings in the superior court."

According to the court's minutes of the proceedings, dated that same day, both parties were *sworn and examined*, and the court received in evidence unspecified "subpoenaed documents from San Diego Police Department."

The minutes also reflect that the court granted Karen's motion for appointment of an elisor and denied Christopher's motion for a property control order based on the following pertinent findings and rulings:

> "PER THE MSA, A WRITTEN REQUEST WAS TO BE MADE FOR MEDIATION OR ARBITRATION; NEITHER PARTY HAS MADE THAT REQUEST; PARTIES ARE PREPARED TO PROCEED TODAY."
>
> "PARTIES AGREE THAT THE [EASTLAKE TRAILS HOUSE] IS THE PROPERTY REFERRED TO IN THE JUDGMENT, WHICH WAS AWARDED TO [KAREN] AS HER SOLE AND SEPARATE PROPERTY."
>
> "BASED ON EVIDENCE BEFORE THE COURT, THE COURT FINDS THAT [KAREN] IS IN FACT THE OWNER OF THE [EASTLAKE TRAILS HOUSE] PROPERTY LOCATED AT '2630 FERN VALLEY ROAD.'
>
> "COURT FURTHER FINDS THAT PER THE MSA, THE ABOVE STATED PROPERTY BELONGS TO [KAREN], AS WELL AS THE MORTGAGE THEREON; THE DEBT IS [KAREN'S] SOLE AND SEPARATE OBLIGATION.
>
> "COURT CANNOT FIND THAT THE MSA SHOULD BE SET ASIDE IN FULL, AS REQUESTED BY [CHRISTOPHER].
>
> "COURT MAKES NO ORDER REGARDING THE 'LAS VEGAS' PROPERTY.

7

"IF [CHRISTOPHER] FAILS TO SIGN [QUITCLAIM] DEED, COURT WILL SIGN.

"[CHRISTOPHER'S] PROPERTY CONTROL MOTION IS DENIED."

G. *Christopher's Appeal from the Court's Order Appointing an Elisor*

Christopher appealed the court's ruling appointing an elisor to execute a quitclaim deed; he did not appeal the denial of his motion for a property control order. Specifically, Christopher stated in his notice of appeal that he is appealing from the "Judgment to Appoint Elisor" entered on December 17, 2012. The notice of appeal makes no mention of the court's denial of Christopher's property control motion. In his appellant's opening brief, Christopher states he is appealing "[t]he Judge ruling and order to appoint an Elisor."

DISCUSSION

A. *The Incomplete Record Is Fatal To This Appeal*

We first conclude Christopher has forfeited his claims by failing to provide an adequate record for appellate review. We are mindful that he is representing himself. However, his status as a party appearing in propria persona does not provide a basis for preferential consideration. "A party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.] Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

8

It is well-settled that "[a]ppealed judgments and orders are presumed correct, and error must be affirmatively shown." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) As the party challenging the court's presumably correct findings and rulings, Christopher is required "to provide an adequate record to assess error." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

"In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.)

Here, a fatal problem with this appeal is that Christopher fails to provide us with a reporter's transcript of the evidentiary hearing on Karen's motion or any other adequate statement of the evidence considered by the court in making its findings and rulings. Christopher is challenging the court's order granting Karen's motion for appointment of an elisor, which the court issued at the conclusion of the December 17, 2012 evidentiary hearing. As noted, *ante*, the record shows both parties were sworn as witnesses and examined. However, Christopher has not provided in the appellate record a copy of the reporter's transcript of the December 17, 2012 evidentiary hearing. His Appellant's Notice Designating Record on Appeal shows he specifically elected to proceed "WITHOUT a record of the oral proceedings in the superior court." By doing so, he has withheld from the record for appellate review testimonial evidence considered by the court. Accordingly, we conclude Christopher has forfeited his claims by failing to

9

provide an adequate record.  (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 186.)

B.  *Christopher's Failure To Comply With Rules 8.204(a)(1)(B) and 8.204(a)(1)(C) Is Fatal to This Appeal*

Even if Christopher had provided this court with an adequate record for appellate review, he has forfeited his claims by failing to comply with rules 8.204(a)(1)(B) and 8.204(a)(1)(C).

1.  *Rule 8.204(a)(1)(B)*

Under rule 8.204(a)(1)(B), Christopher's appellant's opening brief was required to "[s]tate each point, under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority."

Christopher has failed to comply with this requirement.  Not only has he failed to state each of his points of argument under a separate heading or subheading summarizing the point, but, of greater importance, he has cited *no legal authority* in support of *any* of his arguments.

2.  *Rule 8.204(a)(1)(C)*

Under rule 8.204(a)(1)(C), Christopher's brief was also required to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

"[I]t is [a litigant's] duty to point out portions of the record that support the position taken on appeal.  The appellate court is not required to search the record on its

own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 (*Del Real*).)

Furthermore, "[a] violation of the rules of court may result in the striking of the offending document, the waiver of the arguments made therein, the imposition of fines and/or the dismissal of the appeal." (*Del Real*, *supra*, 95 Cal.App.4th at p. 768.) Thus, if a party fails to support a particular point or argument with the necessary citations to the record, we may deem it forfeited. (*Ibid.*; accord, *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [applying former rule 14(a)(1)(C)]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

Here, as Karen correctly asserts, Christopher's opening brief on appeal "is riddled with . . . unsupported facts." For example, without supporting citations to evidence in the record, Christopher asserts that (1) Karen "breached" the MSA "by intentionally failing to honor [it]"; (2) Karen "did not transfer to [him] his share of the couple[']s assets"; (3) Karen "never signed over nor did she transfer her interest/ownership [in the "Vegas Condo"] using any documents or any procedures whatsoever to [him]"; and (4) Karen and he "entered into New Agreements including [the loan modification agreement] making the [loan modification agreement] a 'Novation' of the [MSA]" and "retaining and claiming ownership together of the 'Eastlake Trails House.'"

We conclude that (1) by failing to provide an adequate record for appellate review, Christopher has failed to meet his burden of affirmatively demonstrating the court's findings and rulings were erroneous; and (2) by failing to comply with rules

11

8.204(a)(1)(B) and 8.204(a)(1)(C), he has forfeited his claims on appeal (*Del Real*, *supra*, 95 Cal.App.4th at p. 768; *Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246; *Duarte v. Chino Community Hospital*, *supra*, 72 Cal.App.4th at p. 856).

## DISPOSITION

The order is affirmed. Respondent Karen Roque Jackson shall recover her costs on appeal.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

AARON, J.

12